May it please the Court, Todd Barron for the appellants in this matter. We are asking the Court to reverse the dismissal of this case by the District Court because it was based on choice-of-law and choice-of-form clauses in a franchise agreement that are unenforceable. The briefs address two main areas of argument as to why these provisions were unenforceable. The first area deals with substantive unconscionability under Washington law. The second area deals with whether or not these provisions survived repudiation. If the terms did not survive repudiation, that moots the unconscionability issue, and the Court does not have to reach it. So I'm going to start there because that argument did not get as much attention in the briefs. It seems to me that most cases that deal with the question whether an arbitration clause survives the termination of a contract say that if the dispute concerns the contract, the arbitration clause survives as a method of dealing with that dispute under the previously existing contract. Why shouldn't that be the rule? I think there's a distinction between those cases and this one because they involved either contracts that were silent as to the survival of dispute resolution provisions, and therefore there can be an inference that those dispute resolutions should survive, or they were not dealing with a repudiation. They were dealing with a termination pursuant to the contract terms or the statutory terms. And that distinguishes this case. What difference does repudiation make? Isn't that just a way of unilaterally avoiding the chosen method of dispute resolution if you open that door? It depends on if you are the party trying to enforce that provision or not. I think the party that repudiates cannot seek the benefit of any of the contract terms that it has repudiated. I don't believe that the non-repudiated party... There's something between, just to clarify your answer, Judge Graber asked, you know, I think implicit in her question is, are you drawing a distinction between termination and repudiation? You just said whoever repudiates it can't take advantage of the terms. So unless I exercise what? There are distinctions, I believe. What are they here? The distinctions are that there are termination processes that are prescribed by both statutory law and the contract. And if you don't follow those, you have essentially repudiated the contract. Now, if you have terminated... Why isn't that just a breach of contract? I don't understand. Which then becomes an arbitrable issue. Well, let me step back. If I can go through the first issue, maybe we won't get hung up on repudiation. Because I think at the end of the day, that doesn't really matter. Going back to my initial point that one of the distinguishing facts in this case is that there is not silence on survivability. There is, in fact, several provisions that address survivability. And that's a distinguishing fact. Point me just specifically to what part of the contract, in your view, limits Article 23 arbitration in a time sense, the way you're wanting it to be limited. Okay. Section 7 of the agreement, which is at ER 21, says that franchisees shall not, during the term of the agreement or thereafter, communicate, divulge, or use confidential information. So there's an express contract provision that deals with one aspect of the contractual relationship that will survive termination. What was that provision again? That was the provision dealing with confidential information. It appears at ER 21. It's in Section 8 of the contract. That's fine. I got it. I just want to get on the page. Okay. I'm sorry. ER 21 and what? Okay. The next one is here. Which paragraph were you? Section 8. Confidential information. Yes. Okay. Okay. So Section 9A of the agreement. I'm sorry. What was it in 8 that you were citing to me? That it addresses the issue of whether or not the confidentiality obligation will survive termination of the contract. And it says expressly that it will. And then we go to Section 9 that deals with the preservation of books and records post-termination. And this contract says expressly that books and records will be preserved after the termination of the contract. So you're asking for a negative inference. There's nothing specific that says this arbitration clause does not apply or no arbitration shall take place after the end of the contract term. There's nothing like that. There's nothing like that. But there's also nothing like these other provisions, again going to ER 31, that in bold cite obligations upon termination or expiration of this contract. But you don't think any and all disputes is broad enough to cover any and all disputes? Well, that the disputes arise because of the contract. You know, if somebody three weeks after the contract ended, if somebody ran somebody else over with a truck, it wouldn't be arbitrable. It wouldn't have to do with the contract. It would not have arisen during the time of the contract. So it still has to be something coming out of the contract for it to be arbitrable. I think everybody agrees with that. But if it does arise out of the contract, I don't understand why any and all disputes between them isn't broad enough to cover it. It may be, but it is not one of the provisions. I think if you're looking for a distinguishing factor between this case and the other cases, the other cases draw an inference from silence because there is no survival provision in the contract at all. Then the courts have said, well, we'll infer that the arbitration and dispute resolution provisions provide. Here, these parties entered a contract that said expressly, certain obligations survive the termination of the agreement. So the reverse implication is that none of the other provisions of this contract survive termination. Who decides this question? Is this something that the arbitrator would have to interpret in looking to the contract or you're saying that it goes to the court to decide as a matter of contract law whether the contract by its own terms does or doesn't preserve the arbitration? If there's no question of fact, I believe it's a question for the court because it's a question of interpreting the contract. It is extrinsic evidence about the party's intent. Is that a question of fact? If it came in, I think it would be a question of fact. So who would that go to? That would have to go to a trier of fact, but that wasn't our case. Our case was presented solely on the face of the document, and there was no evidence as to negotiation or anybody's understanding of these provisions. It was just this contract says certain provisions survive. The reverse implication or the negative implication is that other provisions do not survive termination. So even if that could be the case, that then raises the issue of whether there's a difference between a repudiation of an agreement and a termination of an agreement. And if we're going to say that there is an implied provision here that these dispute resolutions survive termination, the question is can a party waive its right to enforce that by foregoing all of the contractual and statutory procedures that are set out for termination and simply say, I'm not going to recognize this contract anymore because that was the effect, the tone and tenor and clear implication of the letter that was received or the e-mail that was received by my clients from GOSH Enterprises when GOSH decided it didn't want to be a party to this contract anymore. Okay, so what you're saying is if we look to the default and termination section of the agreement, ER 29 and thereafter section 13, that none of those procedures, notice, et cetera, et cetera, were followed and therefore looking at that e-mail declaration that no contract, nothing about the terms is going to survive or whatever it said or is enforced anymore. Even if under the ordinary circumstances termination would result in survival, under these unique circumstances it cannot because they didn't comply with the contract and they didn't comply with the... Just give me an example of what they failed to do. Well, I'm looking at revised Code of Washington, 19-100-180. That requires a notice of what the defaulting party has done and a 30-day opportunity. This is the FIPPA? Yes, this is the FIPPA. And if there's a cure within those 30 days, then you have to have three violations before you can terminate. So they didn't do that and they didn't follow the contract either. They simply just sent a unilateral letter saying we're done with this relationship. And I think that takes it out of the case law that says that any type of post-termination dispute resolution provision can survive. I'm going to save the rest of my time for rebuttal. Can I just, before you do that, are you saying you're relying, you gave me an example, but you turned to Washington law. Is there anything in the contract that they failed to follow? Yes, they did not follow the contractual termination. As well. So both FIPPA and contract. Correct. Thank you. Thank you. You have some rebuttal time remaining. Mr. Reed. Thank you, Your Honor, and may it please the Court, my name is Ben Reed and I am counsel for GOSH Enterprises, Inc., the appellee in this matter, and the franchisor of the Charlie's Grilled Subs restaurant chain. I'd like to address the repudiation issue because that seems to be the focus of Mr. Barron's presentation and the Court's questioning. And I think the focus on the negative inference is key here. The case law is out there where there were provisions that provided for survival of certain terms of the contract, not including the dispute resolution provisions. And in all of those cases, and I don't believe there is an appellate court case, and certainly not one from this circuit, but in those cases the courts have said it doesn't matter because the presumption is set forth by the Supreme Court is that the arbitration provision survives the termination. It's a presumption, though, and it's just to focus in because counsel was referencing ER-7, which is this notification from Mr. Meerman to Mr. Salimi. It says, this is to inform you that all your franchise agreements with GOSH, dated 8-24-07, have been fully terminated. And then it concludes by saying, no contractual obligations exist anymore. Now, if that's taken literally, should that be read as saying that even the pro-GOSH provisions in this, about confidentiality and the like, that by the terms of the agreement were there to protect GOSH and its trade secrets, those didn't apply either so that Mr. Salimi was totally relieved of any non-competition, any of the provisions that are in this that talk about explicitly surviving the contract. With all due respect, Your Honor, that's not actually how I would read that e-mail. I think he's taking that no obligations out of context. If you look at the- I'm sorry, what's the context? I'm looking at the e-mail. Right, no, I- It says- Yes, it says, we are unwilling to arrange training for you or accommodate any request from this point onwards since you are no longer franchisee of GOSH and no contractual obligations exist anymore. I'm sorry, I'm looking at ER-7. That's what I'm looking at, Your Honor. The second paragraph. The second paragraph. Oh, I see. Okay. So when we're saying that there's no contractual obligations, that e-mail is talking about obligations for GOSH to do any of these things, the franchisee. We don't have what the e-mail is responding to. Wait a minute. Let's not cherry-pick. Okay. I take your point, but it says the franchise agreements have been fully terminated. That's what it says. And then it talks about this specific issue about, but there are no contractual obligations exist anymore. So you're still not answering my question. I'm asking whether one could reasonably understand that to say nothing under the contract exists anymore, no contractual obligations. That's a unilateral declaration. Why wouldn't Mr. If we were in here on a trade secrets claim or a competition violation claim, wouldn't you expect them to be arguing that you relieve them, relieve Mr. Salini of any obligations under the contract? Two things on that, Your Honor. I think first, as you said, it was a presumption. But the presumption from the Drake Bakeries case from the Supreme Court from 1962 is that the presumption is that unless the arbitration provision itself is reviewed. Excuse me, counsel. You're not answering my question. You're now shifting over to what you'd like to argue about. But what I'd like to understand is what would someone understand as to the total contract, which wasn't just about arbitration. It had lots of obligations. And you have counsel, for gosh, telling Mr. Salini there are no contractual obligations that exist anymore. And I'm asking you, well, is that reasonably understood that even those provisions, not the arbitration, but the provisions like trade secret protection and confidentiality and non-compete and whatever else, those have been erased as well? I believe that's probably accurate, Your Honor. And I think the reason for that is there isn't a presumption that those types of provisions survive termination. Okay, so you're relying just on the presumption, and you're making it a conclusive presumption. A conclusive presumption absent some evidence of intent of, gosh, to actually repudiate the arbitration provision. But why isn't this evidence of intent to repudiate if you have language saying the contractual provisions are all voided? Why doesn't that rebut the presumption? I think you need something clearer than that, because I think the cases all say that it has to be expressed or by clear implication. And it's not just of the entire contract. It's of the arbitration provision itself. But the entire contract includes the arbitration provision. Correct, but the cases have all held that even if you repudiate the contract, you haven't repudiated the arbitration provision unless you repudiate that express provision. Okay, but you did concede that it's reasonably understood that the non-compete and trade secret confidentiality, to take two examples, would not survive, notwithstanding their express language that they would. I don't – I can see how someone would understand that.  But as you said, we don't know what the full intent of the email is. Okay. I think what's somewhat instructive is the Litton case, the Litton financial case. And in that case, the Supreme Court looked at a grievance provision in a collective bargaining agreement. And I believe the parties trying to avoid arbitration actually pointed to provisions of that agreement that said that the agreement would only survive through a certain period of time. They looked at some stipulations. They looked at other parts of the arbitration provision. And the court said that despite those provisions, the arbitration provision still fell within the Nolde brothers' line and that it would enforce the arbitration provision. Despite these express statements that the contract would not survive. And so even when there were express statements, as long as the arbitration provision didn't include some time limitation and as long as there was no evidence that that was intended to be repudiated, you would enforce the arbitration provision to apply to disputes that arose out of the contract. What weight should we give to counsel's argument that the agreement itself, which is drafted by Gosch, did not make contractual, as opposed to relying on this presumption, did not make explicit the way it did carefully with respect to other contractual provisions, that the arbitration was one of those that survived as well? I think in the face of the case law that says that arbitration provisions are presumed to survive termination and other provisions as well, choice of law provisions, choice of form provisions, the kind of mechanical provisions where the right sort of vests when you enter the contract, as opposed to provisions such as nondisclosure of confidential information, covenants not to compete, which unless you specify that they extend beyond the term of the contract, the presumption is they do end. It's a different default rule. I don't believe that, I know there may be, I don't know of a case that says that if you have an obligation to keep something confidential, that it extends beyond the term of whatever agreement you have that keeps that provision confidential. Certainly with non-competes, those are looked on with a jaundiced eye many times by courts, even where they do provide for after termination non-competition. Certainly if you don't provide for that, you're not going to be able to enforce some restriction on competition after the expiration of the agreement. So I think it's a little bit different. Counsel, do you think that Litton is your strongest case to support your argument regarding survival of the arbitration clause? I don't think Litton is necessarily the strongest case. It's one of many. I think the authority is so overwhelming on that side, I don't know that I'd pick a particular case. I think the Natchez Valley case from the Washington Court of Appeals is another important case, because if you're looking at an issue of what a Washington court has done under Washington law, because, you know, we're arguing that Washington, at least both parties have assumed that Washington law applies for purposes of this appeal in the motion below, that court also said that the arbitration provision would govern a grievance three years after the termination of the contract, because the dispute arose under the prior contract. But didn't most of those cases involve simply interpreting the terms of the agreement and did not have the separate correspondence that emphasized that the contract terms were no longer valid? Do you have a case that was similar, where there was a separate communication sent, emphasizing that the contract terms were no longer in effect? I believe there is one, Your Honor. Well, you don't have to spend your time here searching. If you don't know, I'm just asking the question, because you talked about Litton, and I noticed that Litton is talking about the actual terms of the agreement and didn't have the separate fact that we have here, where there was over and above a communication expressly. I believe in Nolde Brothers, and I could be wrong about this, so I apologize if I misspeak. I believe in Nolde Brothers, I want to say it was the employer as opposed to the union, had basically violated the no-strike clause and had repudiated the agreement for all intensive purposes. And yet the court said that the dispute at issue would still be governed by the arbitration provision. But you didn't have a separate communication saying the contract provisions are no longer effective. That's what I see as the main difference between the cases upon which you rely and the case we are considering today. I would suggest that if the implied conduct of completely repudiating the agreement is similar to an email saying, if this is how you read the email, there are no further contractual obligations. I think they are the same. I don't know that by saying there's no contractual obligation for us to perform under the contract is equated to that you no longer have to worry about the kind of rights that have already vested in the contract, the choice of law provision, the choice of forum, the merger clause, the indemnification provision, things that vest when the contract is entered that are meant to carry forward without temporal scope. I'm sorry, what was the case you were citing for that? Nolde Brothers, I believe. And again, I don't remember the case 100%. I may be misspeaking on that. And if I am, I apologize. We'll track it down. I know it's a Supreme Court case. How do you say it? Nolde? Nolde. N-O-L-D-E. Oh, Nolde. Okay, thank you. Yes, sir. I'd like to briefly address, if I may, unless there are further questions on the repudiation issue. Could you turn that off, please? Go ahead. One other point. I guess there was a reference to the possibility of waiving the arbitration provision. I know we've talked about the email. I think this Court's standard for waiver, it's a heavy burden, and you have to show that there was a knowledge of a right to compel arbitration, acts inconsistent with that right, and prejudice. I don't think any of those things have been proved in any way by the presentation of this one email. By Gosch saying that we're ending this relationship, it doesn't suggest in any way that Gosch knew that there was a potential claim against it or that it had any desire not to arbitrate that claim if and when it arose. And they certainly took no action consistent with arbitration. As soon as this action was filed, they moved to dismiss. And I don't believe there's any prejudice either, at least none that's been shown. Well, that's in the eye of the beholder as to whether being in arbitration versus being in court is less favorable. Fair, Your Honor. I'm looking at the Nolde case, and I really don't see any extra communication that was there. It was pretty much the same circumstance as in Litton where the contract expired and there was an examination of the contract terms to determine whether or not the agreement to arbitrate should nevertheless exist. So I don't think that helps you. All right. I'm sure there's another case. I do not have it in front of me. I apologize for that. On the issue of the unconscionability argument, I just will quickly run through. There's three arguments that Mr. Salini presents as to why the agreement is unconscionable. I don't think any of them hold water. The first is that it's unilateral. The arbitration agreement is unilateral. Under the Satomi homeowner's case from the Washington Supreme Court, that is not a valid basis for finding unconscionability. The Satomi case involved an agreement to arbitrate that basically- Can you address one because you're running out of time? Yes, Your Honor. One that got my attention a little bit is that the AAA arbitrators are all biased. Is that in this case or not? I don't think so, Your Honor. I'm sorry. Never mind. In any event, the Satomi arbitration agreement provided that the homeowners, the builders could choose, the developers could choose whether or not to require arbitration. And the Washington Supreme Court acknowledged that that was one-sided and said that that standing alone would not render the arbitration agreement unconscionable here. I think the agreement is much different. GOSH is required to arbitrate many claims. And, in fact, the exception, under the exception, which requires arbitration of a dispute about money, Mr. Salini would have a right to go to court on a claim that there was an overpayment. I'm sorry. I misspoke. I was confusing two cases. But I did have a question, which, real quickly, can he raise in this arbitration, can he raise the Washington FIPPA protections? Which protections, Your Honor? Well, my understanding is that he wants to argue that – sorry, I misunderstood. Yes. We believe that he can, subject to whatever defenses we have. I don't believe there's a bar that I know of to him raising claims under the Washington Franchise Protection Act in an arbitration in Ohio. And does Ohio law conflict in any way with the FIPPA kind of protections? There's no provision of Ohio law that is a franchise protection statute. But, again, I know of no Ohio case, and I haven't researched the issue in depth, but I know of an Ohio case that says that you cannot bring a claim under the state. Okay. Thank you. Thank you, counsel. You have some rebuttal time remaining, Mr. Barron. Thank you. Just to follow up on that last point, the choice of law and choice of form provision says that the agreement shall be construed and enforced in accordance with the laws of the state of Ohio. FIPPA is an enforcement mechanism. There is no corollary enforcement mechanism under the laws of Ohio. Therefore, I do not see any leeway within this contract for an Ohio arbitrator to apply Washington FIPPA law. And that was our main concern with this particular provision. The one-sided arbitration clause says that any dispute arising out of the payment of monies, there's only one party that pays money under this contract, and that's Salimi Tugash. So there would be no right for Salimi to have any kind of non-arbitrated dispute that would be subject to that provision. It is purely a one-way clause. And, again, it is not just standing alone the only thing in this contract that is unconscionable. There is the choice of form clause and there is the choice of law clause, both of which, as has been explained in the brief, conflict with the strong public policies of the state of Washington, which are that the Washington franchisees are protected by the Washington Franchise Investment Protection Act. Sorry. Going back briefly to the repudiation issue, I think it's, as far as my reading of the case law, the cases to date have concerned a search for intent solely within the four corners of the contractual agreement that contains the dispute resolution provision. But there is nothing in those cases that I have seen that forecloses a search for that intent in communications that occur after that contract is formed. There is a presumption. There must be a way to rebut that presumption. And if this email standing alone isn't enough to create a question of fact, I wouldn't know what quantum of evidence somebody would have to bring in to rebut that presumption that the courts have recognized. If the court doesn't have any other questions, I will rest. I think we do. Thank you very much. We appreciate the arguments of both counsel. The case just argued is submitted.
judges: Graber, Fisher, Rawlinson